UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 17 Cr. 124 (PAE) |
| -v- | ORDER |
| GLEN ROBINSON, | |
| Defendant. | |

PAUL A. ENGELMAYER, District Judge:

The Court has received a motion from counsel for defendant Glen Robinson seeking

Robinson's compassionate release from Federal Correctional Institution Fort Dix ("FCI Fort

Dix") pursuant to 18 U.S.C. § 3582(c), or in the alternative, service of the remainder of his

sentence in home confinement pursuant to 18 U.S.C. § 3624(c). *See* Dkt. 36 ("Def. Mot."). The

Government opposes this relief. Dkt. 38 ("Gov't Opp'n"). For the reasons that follow, the Court

denies the motion.

I.      **Background**

        A.      **Robinson's Prosecutions Here and in Kentucky State Court**

In May 2013, a search of Robinson's home recovered stacks of bank credit cards, credit

card printers, a credit card scanner and encoder, a credit card embossing device, a handwritten

list of personal identifying information, and several driver's licenses whose information matched

some of the information on the list. *Id.* at 1. Based on this evidence, in October 2016, Robinson

was arrested in New York and released on bail. Robinson then traveled to Kentucky—in

violation of his pretrial release conditions—where he was arrested while attempting to buy

prepaid Visa cards with forged credit cards. The arresting officers found in Robinson's car a credit card reader/writer, 12 forged credit and debit cards, and three forged driver's licenses. *Id.*

In or about January 2017, Robinson pled guilty in Kentucky state court to second-degree criminal possession of a forged instrument, identity theft, and being a first-degree persistent felony offender. *Id.* On February 22, 2017, Robinson pled guilty before this Court to a one-count information, charging him with conspiring to commit access device fraud in violation of 18 U.S.C. § 1029(b)(2). *See* Dkt. 12.

In the Kentucky case, Robinson was sentenced to a term of 10 years' imprisonment. Def. Mot. at 2. In this case, sentencing was held on May 16, 2017. The Court calculated an offense level of 12 and a criminal history category of V, yielding an advisory range under the Sentencing Guidelines of 27–33 months. Robinson's criminal history was based in part on prior convictions in North Carolina and Virginia arising from criminal conduct similar to that underlying this and the Kentucky cases. *See* Dkt. 15 ("PSR") ¶¶ 34–40 (recounting history of document and access device fraud). The Court sentenced Robinson to 30 months' imprisonment. Dkt. 22 ("Sent. Tr."). Below, in addressing how the § 3553(a) factors apply today, the Court will explain its assessment at sentencing of why those factors required such a sentence.

Robinson served his Kentucky sentence first. As of late 2020, it was deemed fully satisfied. Gov't Opp'n at 2. In or about July 2021, after administrative delays, Robinson was transferred into federal custody at FCI Fort Dix to serve his federal sentence. The Bureau of Prisons ("BOP") website estimates his release date as June 10, 2023. Robinson therefore has 16 months left to serve of his 30-month sentence. *Id.*

2

**B.**     **Robinson's Motion for Compassionate Release**

On October 19, 2021, the Court received a motion from Robinson's counsel seeking early release. Counsel argues that compassionate release is warranted in light of the COVID-19 pandemic; the unavailability of the Residential Drug Abuse Program ("RDAP"), which, were Robinson to successfully complete it, could reduce his sentence by up to one year; and his completion of several rehabilitative programs while in custody. Robinson also requests that, in the alternative, he be permitted to serve the rest of his sentence in home confinement. *See* Def. Mot. at 5–9.

On November 3, 2021, the Government opposed Robinson's motion. It argues that he has not exhausted his administrative remedies; that there are not extraordinary and compelling reasons supporting Robinson's release; and that, even if there were, release is unwarranted in light of the factors set out in 18 U.S.C. § 3553(a). *See* Gov't Opp'n at 5–7. The Government further argues that the Court lacks statutory authority to order the alternative relief Robinson seeks—that the balance of his sentence be served in home confinement. *Id.* at 4 (citing *United States v. Ayala*, No. 17 Cr. 618 (RA), 2020 WL 3893543, at *1 (S.D.N.Y. July 10, 2020)).

**II.**     **Discussion**

**A. Governing Legal Principles**

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." The court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.*

3

Originally, § 3582(c)(1)(A) did not permit imprisoned persons to initiate compassionate release proceedings, and instead required the BOP to seek such release on their behalf. *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020). However, with the First Step Act of 2018, Congress amended the law to allow defendants independently to seek compassionate release relief from federal courts. *Id.* at 422–23.

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *Id.* at 427 (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary, which, *inter alia*, (1) define various circumstances that present extraordinary and compelling reasons justifying release; and (2) require that a defendant not be a danger to the community. *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D). But the Commission has not updated that provision to reflect the 2018 First Step Act's amendment to § 3582(c)(1)(A), and its guidance refers only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13. Accordingly, the Second Circuit has held that U.S.S.G § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *United States v. Brooker*, 976 F.2d 228, 236 (2d Cir. 2020); *see also id.* at 237 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, when assessing a motion brought directly by an imprisoned defendant rather than by the BOP, the Court is constrained neither by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court may

"consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237. Even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

### B.   Application to Robinson

#### 1.   Robinson Cannot Establish Extraordinary and Compelling Reasons Warranting His Early Release[1]

Robinson's principal basis for arguing that extraordinary and compelling reasons warrant his release is the COVID-19 pandemic and its impact on the conditions of his confinement. Defense counsel admits that Robinson "apparently does not personally have any medical condition that would place him at special risk from COVID-19." Def. Mot. at 7. But, counsel notes, the pandemic has caused lockdowns, curtailed social visits, and limited programming options at FCI Fort Dix. In particular, counsel notes, the pandemic has caused the BOP's RDAP to be less widely available at the facility. Counsel notes that, had Robinson entered and successfully completed this program, he would have been eligible for a discretionary reduction of his sentence by one year by BOP. *Id.* at 6–8; *see* 18 U.S.C. § 3621(e).

In a number of cases involving defendants with significantly heightened vulnerability to COVID-19 and who had generally served the substantial majority of their sentences, this Court

---

[1] The parties dispute at the threshold whether Robinson has exhausted his administrative remedies. Robinson's counsel attaches a one-page form, completed by Robinson, dated August 24, 2021, titled "Compassionate Release/Reduction in Sentence." Def. Mot. Ex. A. The form does not, however, on its face establish that it was submitted to the Warden at FCI Fort Dix (or otherwise to BOP), or that it was acted upon by BOP. And the Government states that Robinson "never submitted an administrative request to the Warden arguing that [Robinson] is entitled to compassionate release[.]" Gov't Opp'n at 5. Because the Court denies Robinson's motion for compassionate release on the merits, it need not resolve whether Robinson exhausted his administrative remedies.

has granted early release pursuant to § 3582(c).  The Court and others in this District have found

compelling the arguments for ordering the expedited release of inmates at high risk from Covid,

whether in the context of the temporary release from pretrial or presentencing custody[2] or, as

sought here, the compassionate release during the service of a federal sentence.[3]

---

[2] *See, e.g.*, *United States v. Chandler*, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3
(S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C. § 3142(i), of
defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, 450
F. Supp. 3d 449, 451–53 (S.D.N.Y. 2020) (granting bond pending sentencing, pursuant to 18
U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly
weapon and had previously been released on bond); *United States v. Witter*, No. 19 Cr. 568
(SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to
§ 3145(c), to defendant who had pleaded guilty to a narcotics offense); *cf. United States v.
Stephens*, 447 F. Supp. 3d 63, 67–68 (S.D.N.Y. 2020) (granting defendant's request for
reconsideration of bail conditions and releasing him to home confinement, while noting that, in
the alternative, § 3142(i) would necessitate his temporary release).

[3] *See, e.g.*, *United States v. Phillibert*, No. 15 Cr. 647 (PAE), Dkt. 65 at 9–11 (S.D.N.Y. Sept. 1,
2021) (ordering compassionate release into home confinement of defendant who was obese, a
former smoker, had not been provided with the use of his inhaler despite suffering from Chronic
Obstructive Pulmonary Disease, contracted COVID-19 in prison, and who had served
approximately 90% of sentence); *United States v. Ciprian*, No. 11 Cr. 1032-74 (PAE), Dkt. 2581
at 2, 7–9 (S.D.N.Y. Feb. 1, 2021) (ordering compassionate release of defendant who had
COVID-19 and served over 90% of sentence, and Government conceded that there were
extraordinary and compelling reasons for release); *United States v. Mcrae*, No. 17 Cr. 643
(PAE), 2021 WL 142277, at *2, *5–6 (S.D.N.Y. Jan. 15, 2021) (ordering compassionate release
of defendant who suffered from obesity, hypertension, prediabetes, and hepatitis C, had served
70% of their sentence, was a non-violent drug dealer, and Government conceded that there were
extraordinary and compelling reasons for release); *United States v. Benjamin*, No. 15 Cr. 445
(PAE), Dkt. 1144 at 6–7 (S.D.N.Y. Sept. 15, 2020) (ordering compassionate release of defendant
who had asthma and had served nine years of his 10-year sentence); *United States v. Wilson*, 16
Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (ordering compassionate release of
defendant with heightened vulnerability who had served the substantial majority of his sentence
and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 18 Cr. 390
(PAE), Dkt. 507, at 5–9 (S.D.N.Y. Aug. 27, 2020) (ordering compassionate release of elderly
defendant who had served over half his sentence, suffered from, *inter alia*, HIV, cancer, and
hypertension, and played a low-level role in a drug trafficking conspiracy); *United States v.
Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate
release of elderly defendant, who had serious medical conditions and played low-level role in
drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7
(S.D.N.Y. June 17, 2020) (same); *United States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 at 2–4
(S.D.N.Y. Apr. 10, 2020) (same for defendant who had served all but seven months of an 88-

Here, however, Robinson has conceded that he does not face *any* heightened medical risk from COVID-19.[4] His motion instead turns on a circumstance applicable to all FCI Fort Dix inmates: the heightened restrictions at the facility wrought by the pandemic. Descriptively, Robinson's account of the pandemic's harsh impact on prisoners at FCI Fort Dix (and within federal prisons more broadly) is surely correct. It has led to lockdowns and reductions in social visits, recreational time, and rehabilitative programs. Def. Mot. at 7. But as courts in this District have repeatedly held, "the pandemic itself—without more—does not present extraordinary and compelling circumstances warranting a compassionate release." *United States v. Felix*, No. 12 Cr. 322 (RJS), 2020 WL 4505622, at *2 (S.D.N.Y. Aug. 4, 2020) (collecting cases). To establish extraordinary and compelling reasons for his release due to the pandemic, Robinson must instead adduce "individualized factors justifying his release." *Musa v. United States*, 502 F. Supp. 3d 803, 812 (S.D.N.Y. 2020) (collecting cases). Unable to point to any medical condition giving him heightened exposure to COVID-19, Robinson cannot meet this standard.

Robinson's reduced ability to participate in the RDAP program also does not make his circumstances extraordinary and compelling. He argues that smaller RDAP class sizes due to COVID-19 blocked him from securing a spot in a class, and that by the time a new round of RDAP openings occurs, he will be too far into his prison term to be eligible for a sentence reduction for completing the program. Def. Mot. at 3, 6–7. That circumstance, too—the reduced

---

month sentence); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence); *Hernandez*, 2020 WL 1684062, at *3 (same for defendant who had served 17 months of a 24-month sentence and was scheduled for release in four months).

[4] Robinson has also not served even the majority of his 30-month sentence. According to his counsel, his release date is June 10, 2023—some 16 months from now. *See* Def. Mot. at 3.

size of the RDAP program—is of general applicability and not specific to Robinson. *See Musa*, 502 F. Supp. 3d at 812. It does not rise to the level of an extraordinary and compelling circumstance. And Robinson's bid via his § 3582(c) application for, effectively, a sentence reduction of well over a year based on the assumption that he would have completed a program that at most would have won him a one-year reduction of his sentence is unpersuasive. In effect, Robinson seeks to gain a greater reduction of sentence than he would have earned had he successfully completed—rather than failed to gain a space in—this program.

## 2.    Assessment of Section 3553(a) Factors

Even assuming that the general impact of the pandemic on inmates at FCI Fort Dix and/or the inaccessibility of the RDAP program to Robinson presented an extraordinary and compelling basis for his release, the Court would still deny the request. That is because Robinson's release today would be inconsistent with the 18 U.S.C. § 3553(a) factors, viewed in totality.[5]

As this Court explained in detail at sentencing, a 30-month sentence—the mean of Robinson's 27- to 33-months Guidelines range—was the lowest possible sentence consistent with the § 3553(a) factors. The offense was serious insofar as a formidable amount of tools of credit card fraud were found in Robinson's apartment and car. *See* Sent. Tr. at 34–35. Given Robinson's record of committing such fraud, the Court concluded that, had Robinson not been apprehended, he appeared poised to carry out "a pretty substantial fraud scheme" aimed at

---

[5] These factors include "the nature and circumstances of the offense," and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

victims in the mid- and south Atlantic states. *Id.* A meaningful sentence was also necessary to achieve general deterrence, as "crimes like yours involving false access devices and false impersonation scams" are "pretty epidemic in this District and around the country." *Id.* at 35. The Court also found specific deterrence of Robinson particularly necessary, in light of the fact that as of age 29—his age at sentencing—he had a "long criminal record" entailing the commission "of extremely similar crimes." *Id.* at 36. For much the same reasons, the Court concluded, the interest in public protection favored the sentence imposed, as Robinson's track record suggested a real prospect of recidivism following release. *Id.* at 40.

Defense counsel's compassionate release motion emphasizes Robinson's attempts at self-improvement during his incarceration. The programs he has completed include ones involving substance abuse, assisting others recovering from substance abuse, parenting, and anger management. Def. Mot. at 8–9 (citing *id.* Ex. B). Robinson's participation in programs aimed at rehabilitation is laudable. But the Court also expected such of him. "Making good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Negron*, No. 11 Cr. 324 (CS), 2021 WL 3540240, at *2 (S.D.N.Y. Aug. 10, 2021) (citing *United States v. Alvarez*, No. 89 Cr. 229 (JS), 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)). Kentucky authorities have already rewarded Robinson for his productive participation in such programs by reducing his state term of imprisonment from 10 years to approximately four. Without more, these salutary steps are insufficiently weighty to offset the compelling reasons this Court found it necessary to incarcerate for 30 months a serial perpetrator of credit card fraud. As the Second Circuit emphasized in *Brooker*: "Rehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason." 976 F.3d at 238 (quoting 28 U.S.C. § 994(t)) (emphasis in *Brooker*).

For all these reasons, the Court finds the § 3553(a) factors incompatible with a reduction of sentence in this case.

### 3.   The Court Lacks Jurisdiction to Place Robinson in Home Confinement for Remainder of his Sentence

As an alternative to compassionate release, Robinson asks the Court to order that he be allowed to serve the balance of his term in home confinement, not at FCI Fort Dix.

The BOP has authority along these lines.  It may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2).  But although the Court has the authority to impose a supervised release condition of home confinement at the time of sentencing, the authority during an inmate's service of a term of imprisonment to substitute home confinement for the balance of that term is "exclusively within the discretion of the BOP; the Court lacks authority to order home confinement." *Ayala*, 2020 WL 3893543, at *1 (citing *United States v. Ogarro*, No. 18 Cr. 373-9 (RJS), 2020 WL 1876300, at *6 (S.D.N.Y. Apr. 14, 2020)).  The Court accordingly denies, for lack of jurisdiction, Robinson's request to serve the remainder of his sentence in home confinement.  In any event, if the Court had such authority, it would not deploy it here, because—for the reasons given at sentencing and reiterated above—the Court regards a term of imprisonment as necessary to achieve the § 3553(a) factors of just punishment, general and specific deterrence, and protection of the public.

### CONCLUSION

The Court accordingly denies Robinson's motion for compassionate release or for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and his motion for an order that he be allowed to serve the balance of his prison term on home confinement pursuant to 18 U.S.C. § 3624(c)(2).

10

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: February 18, 2022
New York, New York